IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| QUAID J. MCIVER,<br>c/o Colin G. Meeker, Esq.<br>495 Portage Lakes Dr.<br>Akron, OH 44319<br><br>-vs-<br><br>CITY OF BROADVIEW HEIGHTS,<br>c/o Vince Ruffa, Law Director<br>9543 Broadview Rd.<br>Broadview Heights, OH 44147<br><br>&<br><br>CITY OF NORTH ROYALTON,<br>c/o Thomas A. Kelly, Law Director<br>14600 State Rd.<br>North Royalton, OH 44133<br><br>&<br><br>RYAN TIEBER,<br>Broadview Heights Police Department<br>9543 Broadview Rd., Building 19<br>Broadview Heights, OH 44147<br><br>&<br><br>CHARLES CASPIO,<br>Broadview Heights Police Department<br>9543 Broadview Rd., Building 19<br>Broadview Heights, OH 44147<br><br>&<br><br>GERALD KEIL,<br>North Royalton Police Department<br>14000 Bennett Rd.<br>North Royalton, OH 44133<br><br>&<br><br>JOHN DOES 1-10, JANE DOES 1-10, | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT**<br><br>**(JURY DEMAND ENDORSED)** |

1

| | |
|---|---|
| DOE PARTNERSHIPS 1-10. DOE | ) |
| CORPORATIONS 1-10, DOE | ) |
| GOVERNMENTAL AGENCIES 1-10 and | ) |
| DOE ENTITIES 1-10, | ) |
| | ) |
| Defendants. | ) |

Now comes, Quaid McIver, by and through his attorneys, Colin G. Meeker, Robert C. Meeker, and Ben T. Manayan, Jr. of Blakemore, Meeker & Bowler Co., L.P.A., and hereby complains against the City of Broadview Heights ("Broadview Heights"), the City of North Royalton ("North Royalton"), Ryan Tieber ("Officer Tieber"), individually and in his capacity as a Broadview Heights police officer, Charles Caspio ("Officer Caspio"), individually and in his capacity as a Broadview Heights police officer, Gerald Keil ("Officer Keil"), individually and in his capacity as a North Royalton police officer and/or corrections officer, John Does 1-10, Jane Does 1-10, Doe Partnerships 1-10, Doe Corporations 1-10, Doe Governmental Agencies 1-10 and Doe Entities 1-10, names unknown, collectively as Defendants herein, as follows:

**A.    INTRODUCTION**

1. This is a civil rights action seeking justice for the outrageous use of unnecessary police force against a man who is a bilateral above-knee amputee, who uses prosthetic legs to walk, and who was described by Officer Tieber as "a logistical nightmare".

2. Officer Tieber, Officer Caspio, Officer Keil and other presently unknown officers and unknown correction officers failed to credit and recognize Quaid McIver's professed disability, causing substantial injury to Mr. McIver.

3. Mr. McIver seeks damages, pursuant to Title 42, Section 1983 and Section 504 of the Rehabilitation Act of 1973, for deprivation of Mr. McIver's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against: (1) Broadview Heights and North Royalton for its unconstitutional policies, customs and/or practices

2

under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny, and (2) Officers Tieber, Caspio and Keil, individually and in their respective capacities as Broadview Heights and North Royalton Police Officers, for their respective violations of Mr. McQuaid's right to be free from the use of excessive force.

### B. JURISDICTION AND VENUE

4. Mr. McIver's claims are brought pursuant to 42 U.S.C. §1983, the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1211131, *et seq.*, as amended, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §701, *et seq*.

5. This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. §§1331 and 1343.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all events alleged herein occurred in the Northern District of Ohio.

7. Jurisdiction supporting Mr. McIver's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988.

### C. PARTIES

8. Plaintiff hereby incorporated all other preceding paragraphs of this Complaint as if set forth herein.

9. Plaintiff, Quaid McIver, was at all times relevant to this Complaint, a resident of Summit County in the State of Ohio and physically disabled (bilateral above-knee amputee) within the meaning of the Americans with Disabilities Act.

10. Defendant Ryan Tieber was at all times relevant to this Complaint employed as a police officer for the City of Broadview Heights located in Cuyahoga County, Ohio. Officer Tieber was acting under color of law in his capacity as a police officer at the time of the incident.

11. Defendant Charles Caspio was at all times relevant to this Complaint employed as a police officer for the City of Broadview Heights located in Cuyahoga County, Ohio. Officer Caspio was acting under color of law in his capacity as a police officer at the time of the incident.

12. Defendant Gerald Keil was at all times relevant to this Complaint employed as a police officer and/or corrections officer for the City of North Royalton located in Cuyahoga County, Ohio. Officer Keil was acting under color of law in his capacity as a police officer at the time of the incident.

13. Defendant City of Broadview Heights, Ohio is an Ohio municipality, established under the laws of Ohio. Defendant City of Broadview Heights is responsible for the policies, practices, supervision, training, and final decision-making of the Broadview Heights Police Department and its officers. Defendant City of Broadview Heights was at all times relevant to this Complaint the employer of Officers Tieber and Caspio, and ultimately controlled the supervision and oversight of its department, police officers, and the faulty police department policies and training employed and/or relied upon at the time of the incident.

14. Defendant City of North Royalton, Ohio is an Ohio municipality, established under the laws of Ohio. Defendant City of North Royalton is responsible for the policies, practices, supervision, training, and final decision-making of the North Royalton Police Department, its jail, and its officers. Defendant City of North Royalton was at all times relevant to this Complaint the employer of Officer Keil, and ultimately controlled the supervision and oversight of its department, police officers, correction officers, and the faulty police department policies and training employed and/or relied upon at the time of the incident.

15. During all relevant times herein, Defendant Does were, and are, individuals, persons, corporations, partnerships, governmental agencies and entities whose names, identities, capacities, activities and/or responsibilities are presently unknown to Plaintiff(s), or his/her/its/their attorney(s), and could not discover said names who in some manner may be liable to Plaintiff(s), contractually, vicariously, tortiously, jointly and/or severally.  Plaintiff(s) will be obtaining updated reports, as to identity, liability, capacities, activities, existence of additional claims and/or causes of action or otherwise, in connection with or in addition to the claim or claims herein.  Plaintiff(s) reserve(s) the right to plead Defendant Does as party defendant(s) and/or plead additional claim(s) to this action once their identities, capacities, activities, liabilities and claims or causes of action become known.

### D. BASKGROUND FACTS

16. Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

17. Mr. McIver is a bilateral above-knee amputee, meaning that he has had the removal of both limbs above the knee.

18. Mr. McIver routinely uses prosthetic limbs or his wheelchair to move about.

19. Mr. McIver indisputably suffers from a physical impairment that substantially limits his ability to perform several major life activities.

20. On Wednesday, August 10, 2022, at approximately 2:36 AM, the vehicle that Mr. McIver was driving was involved in a traffic stop by Officer Tieber after a suspicion of driving under the influence.

21. Not too long after the traffic stop, Officer Caspio arrived on the scene; both officers approached Mr. McIver's vehicle.

22. When asked to exit the vehicle, Mr. McIver advised Officer Tieber and Caspio that he had "fake legs" as a result of an injury twelve-years prior; Officer Tieber noted that Mr. McIver walked with the help of two fully prosthetic legs.

23. After removing Mr. McIver from his vehicle, Officer Tieber performed the Horizontal Gaze Nystagmus Test on Mr. McIver. Later, even though Mr. McIver offered to "walk a line", Officer Tieber did not allow Mr. McIver to complete coordination tests to prove that he was not intoxicated because of Officer Tieber's perceived "obvious disadvantages", which would result in "zero evidentiary value".

24. Later, Officer Tieber arrested Mr. McIver for charges, including Operating a Vehicle while Impaired ("OVI"), and sat Mr. McIver in the backseat of Officer Caspio's cruiser.

25. Officers Tieber and Caspio did not secure Mr. McIver with a seat belt. Due to how he was positioned, they could not fasten the seat belt around his waist. Officer Caspio stated that he "would drive as safe as possible."

26. Due to Mr. McIver's prosthetic limbs being unable to fold and fit in the backseat leg and foot area of the cruiser, Officers Tieber and Caspio loaded Mr. McIver into Officer Caspio's cruiser, a Ford Explorer, so that his prosthetic knees were jammed into the partition wall of the cruiser, with his back leaning against the driver's-side backseat door.

27. At all times while he was loaded into the backseat of the cruiser, Mr. McIver had his hands handcuffed behind his body.

28. Officers Tieber and Caspio then transported Mr. McIver to the North Royalton Police Department Jail for processing.

29. At all times while he was being transported to the North Royalton Police Department Jail, Mr. McIver had his hands handcuffed behind his body.

6

30. Upon arriving to the North Royalton Police Department Jail, Officers Tieber and Caspio, now joined by Officer Keil, began the process of removing Mr. McIver from the cruiser.

31. Prior to officers removing Mr. McIver from the cruiser, Mr. McIver made clear and emphatic requests that he be removed feet first from the passenger side; due to his disability and because his hands were handcuffed behind his back, Mr. McIver could not physically exit the vehicle on his own and wanted to come out of the cruiser standing up.

32. Officers Tieber, Caspio, and Keil ignored Mr. McIver's reasonable accommodation request to be removed feet first through the passenger side backseat door.

33. Instead, Officers Tieber, Caspio, and Keil decided to remove Mr. McIver from the driver's side backseat door which he was leaning against.

34. Upon opening the driver's side backseat door which Mr. McIver was leaning against and attempting to remove him headfirst, Mr. McIver was ordered by the officers to lean back and fall into their arms. While leaning back, Mr. McIver's leverage, position and weight caused him to fall outside of the cruiser; the officers failed to grab him and prevent his fall.

35. The officer's illogical, painful, and illegal removal of Mr. McIver's body caused his torso and head, with his arms secured behind him, to fall and strike the concrete ground, while his legs remained on the cruiser seat; Mr. McIver was left hanging upside down from the cruiser with his shoulders, neck and the back of his head striking the ground.

36. The fall to the floor, caused by the officer's improper extraction, severely injured Mr. McIver's neck, spine and arms.

37. While hanging upside down and in pain, Officers Tieber, Caspio, and Keil pulled Mr. McIver completely out of the cruiser and onto the concrete floor.

38. Next, Mr. McIver was rolled onto his stomach and lifted onto his feet by wrenching his handcuffed arms vertically upwards.

39. Officers Tieber, Caspio, and Keil then booked Mr. McIver into the North Royalton Police Department Jail.

40. At some time prior to leaving the North Royalton Police Department Jail, correction personnel, likely Officer Keil, asked if Officer Tieber could drive Mr. McIver to the Broadview Heights Police Department to post his own bond, because "a man without legs was a logistical nightmare for jail personnel."

41. At all times, from the traffic stop through his incarceration at the North Royalton Police Department Jail, Mr. McIver was cooperative, cordial, polite, non-aggressive, non-combative, responsive, and most importantly, respectful, to Officers Tieber, Caspio, and Keil.

### E. CLAIM I:
### 42 U.S.C. 1983 – Excessive Force
### (Against Officers Tieber, Caspio, and Keil)

42. Plaintiff incorporates all other preceding paragraphs of this Complaint as if set forth herein.

43. Officers Tieber, Caspio, and Keil intentionally and knowingly applied unnecessary, unreasonable, and excessive force against Mr. McIver by removing him head first instead of feet first without any regard to his disability.

44. At the various times Officers Tieber, Caspio, and Keil used force, Mr. McIver never posed any serious threat to the officers or anyone else; Mr. McIver was, at all times cooperative and at the mercy of his assailants.

45. At the various times Officers Tieber, Caspio, and Keil used force, they failed to utilize lesser means of force, reasonably communicate with, and/or control of the situation, despite Mr. McIver's obvious disability and the officers having plenty of time and opportunity to do so.

46. Officers Tieber, Caspio, and Keil, to be sure, did maintain the use of inordinate force on Mr. McIver; this despite his exclamations and reasonable requests for accommodation for the removal of his body from the cruiser.

47. Even postured by these insuperable facts, if the officers were justified in using some level of force during the encounter (which we insist was unjustified), the quantum or force used went far beyond that which could be considered reasonably justified under the circumstances.

48. Officers Tieber, Caspio, and Keil use of force under these circumstances was objectively unreasonable; it was undoubtedly cruel and unusual punishment inflicted upon Mr. McIver.

49. The actions as described herein of Officers Tieber, Caspio, and Keil while acting under color of state law also deprived Mr. McIver of the rights, privileges, and liberties secured by the Constitution of the United States of America, including the right to freedom from unreasonable seizure as guaranteed by the Forth Amendment of the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. §1983.

50. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. McIver suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

### F. CLAIM II:
### 42 U.S.C. 1983 – Municipality Liability
### (Against City of Broadview Heights and City of North Royalton)

51. Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

52. The City of Broadview Heights and the City of North Royalton at all times relevant have maintained a policy, custom, or practice that has been the cause behind the violation of disabled citizens' rights.

53. Specifically, this policy, custom, or practice involves the unlawful restraint and removal of disabled citizens from City owned police cruisers, without recognition of one's disability or respect for one's reasonable accommodation requests, in the absence of concern for officer safety.

54. The above-described policy, custom, or practice was the direct and proximate cause of Officers Tieber, Caspio, and Keil violating Mr. McIver's Fourth, Fifth, Eighth, and Fourteenth Amendment rights, enforceable through 42 U.S.C. §1983.

55. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. McIver suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

### G. CLAIM III:
### Discrimination and/or Failure to Accommodate Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131, *et seq.*
### (Against City of Broadview Heights and City of North Royalton)

56. Plaintiff hereby incorporated all other preceding paragraphs of this Complaint as if set forth herein.

57. At all times relevant, herein, Mr. McIver was a disabled person within the meaning of the Americans with Disabilities Act; he is a bilateral above-knee amputee.

58. Officers Tieber, Caspio, and Keil knew or should have known that Mr. McIver was a person with a disability at various times during the encounter.

59. Officers Tieber, Caspio, and Keil did not receive adequate training to recognize that Mr. McIver was a person with a disability and/or ignored Mr. McIver's attempts at reasonable accommodation.

60. Ultimately, it seems that Officers Tieber, Caspio, and Keil disregarded Mr. McIver's repeated requests for accommodation for his disability; they chose to treat Mr. McIver as a person with actual working legs.

61. Officers Tieber, Caspio, and Keil had no plan in place to ensure Mr. McIver's safety once he was placed into the backseat of Officer Caspio's police cruiser, thereby making their removal of Mr. McIver patently unreasonable.

62. Because of Mr. McIver's disability, and behavior relating to that disability, he was treated in disparate manner. In particular, he was singled out by Officers Tieber, Caspio, and Keil for disparate treatment when they should have recognized Mr. McIver was attempting to protect himself from being injured.

63. Officers Tieber, Caspio, and Keil treated Mr. McIver with contempt, disdain, and indignity instead of attempting to reasonably understand Mr. McIver's disability and/or Mr. McIver's limitations.

64. When responding to Mr. McIver's requests for accommodation, Officers Tieber, Caspio, and Keil did not employ appropriate and proportional tactics, such as the use of communication with Mr. McIver or simple soft hands techniques or restraint, but instead responded with overwhelming and unnecessary force when attempting to remove Mr. McIver from the police cruiser.

65. Officers Tieber, Caspio, and Keil continued using inappropriate force from the time Mr. McIver arrived at the North Royalton Police Department Jail until he was violently picked up off the ground by his arms, which were handcuffed behind his back.

66. Mr. McIver was humiliated, degraded, discriminated against and excluded from the benefits and services of the Broadview Heights and North Royalton police departments, including by:

   a. denying him assistance relating to his disability and the means to move; and
   b. denying him reasonable accommodations including safely removing him from the police cruiser feet first, or via some other previously planned out safe method of removing him from the police cruiser.

67. Broadview Heights and North Royalton and its agents' employees were required by relevant provision of the ADA to treat Mr. McIver with reasonable care concerning his disability and the provision of benefits and services offered by the cities and their police departments, to provide reasonable accommodations so that Mr. McIver could meaningly participate in the programs, services, and benefits of the cities, and to implement sufficient policies, practices, procedures, and training sufficient to effectuate the mandate of the ADA to ensure that persons who suffer from disabilities were not discriminated against and relegated to second-class citizen status, particularly in such routine circumstances as a jail booking. Instead, Mr. McIver's disability was met with contempt, disregard, and overwhelming and unnecessary uses of force that caused serious injury.

68. Broadview Heights and North Royalton, as public entities, and its agents and employees, ignored Mr. McIver's obvious needs and treated him with contempt in circumstances that are likely demonstrative of much larger systematic problems, including lack of training on

12

encounters and communications with mobility-disabled persons, and which undoubtedly contributed to the harms identified above.

69. As such, Broadview Heights and North Royalton have willfully disregarded their duties under the ADA and have knowingly allowed unlawful policies and practices to persist related to the provision of services, programs and activities to individuals with disabilities, and specifically with respect to the use of force against individuals with disabilities.

70. Despite the long-standing and clear (and unambiguous) provisions of the ADA, it seems Broadview Heights and North Royalton continue to enforce policies and practices that discriminate against Mr. McIver and other persons with disabilities; therefore, an actual controversy exists between the parties and entitles Mr. McIver to declaratory relief pursuant to 28 U.S.C. §2201.

71. Without the declaratory and injunctive relief requested herein, Mr. McIver, who resides in Northeast Ohio, is, to be sure, likely to encounter the same discriminatory policies and actual practices.

72. Without the declaratory and injunctive relief requested herein, Broadview Heights, North Royalton, and their agents will continue to discriminate against Mr. McIver on the basis of disability in violation of the ADA and its implementing regulations.

73. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. McIver suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

**H. CLAIM IV:**
**Violations of Section 540 of the Rehabilitation Act of 1973**
**(Against City of Broadview Heights and City of North Royalton)**

74. Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

75. Broadview Heights and North Royalton have denied Mr. McIver access to programs, benefits, and services provided to individuals who come into contact with officers from their respective cities, and for which he was qualified to participate, solely on the basis of his disability, thereby violating Section 504.

76. Specifically, and without limitation, Broadview Heights and North Royalton discriminated against Mr. McIver by:

   a. Ratifying and condoning the unnecessary use of force against a severely disabled individual who posed no threat to himself or others;

   b. Maintaining a use of force policy which, in practice, does not accommodate individuals with disabilities or permit modification as necessary to protect individuals with disabilities who pose no threat to law enforcement officers, the public, or themselves;

   c. Failing to adequately train officers of Broadview Heights and North Royalton regarding the rights of individuals with disabilities with respect to the appropriate use of force; and

   d. Failing to adequately supervise officers of Broadview Heights and North Royalton regarding interactions with individuals with disabilities with respect to the appropriate use of force.

77. Despite the clear provisions of Section 504, Broadview Heights and North Royalton persisted in imposing policies and actual practices which discriminate against Mr. McIver and other persons with severe disability who come into contact with law enforcement officers.

78. As a direct and proximate result of the acts, omissions, and violations alleged above, Mr. McIver suffered damages, injuries, pain and suffering, emotional distress, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, reasonable and necessary medical and other expenses.

**WHEREFORE**, Plaintiff Quaid McIver respectfully prays that this Court enter judgment in his favor and against all Defendants, and award all relief as allowed by law and equity as appropriate, including, without limitation, the following:

a. Declaratory and injunctive relief;

b. Actual economic damages as established at trial;

c. Compensatory damages, including without limitation, those for past and future pecuniary and non-pecuniary losses, pain and suffering, emotional distress, impairment of quality of life, reasonable and necessary medical and other expenses;

d. Punitive damages;

e. Issuance of an Order mandating appropriate equitable relief, including, without limitation, changes to policies, procedures, and actual practices of Broadview Heights and North Royalton relative to individuals with disabilities;

f. Pre- and post-judgment interest at the highest lawful rate;

g. Costs, expert witness fees, and reasonable attorney fees, as allowed by statute or as otherwise allowed by law; and

h. For any other and further relief that this Court shall deem just and proper.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

*/s/ Colin G.* Meeker

COLIN G. MEEKER (Ohio #0092980)
ROBERT C. MEEKER (Ohio #0013019)
BEN T. MANAYAN, JR. (Hawaii #5692)
Blakemore, Meeker & Bowler Co., L.P.A.
495 Portage Lakes Dr.
Akron, Ohio 44319
330-253-3337 [voice]
330-253-4131 [facsimile]

Attorney for Plaintiff, QUAID MCIVER